David PECARSKY and Overall Supply, Inc. on behalf of themselves and all others, Plaintiffs–Appellees,

v.

GALAXIWORLD.COM LIMITED, formerly known as Gaming Lottery Corporation and Jack Banks, also known as Jacques Benquesus, Defendants–Appellants,

Larry WELTMAN, Defendant.

Nos. 00–7287(LEAD), 00–7295(CON) and 00–7655(CON).

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 2000.

Decided May 10, 2001.

Sheldon Eisenberger, The Law Office of Sheldon Eisenberger, New York, NY, for Defendants–Appellants.

Deborah Clark–Weintraub, Francis P. Karam, Milberg Weiss Bershad Hynes & Lerach LLP; Lester L. Levy, Robert C. Finkel, Wolf Popper LLP, New York, NY, for Plaintiffs–Appellees.

Before CARDAMONE, PARKER, and KATZMANN, Circuit Judges.

PARKER, Circuit Judge:

## I. INTRODUCTION

On this appeal we must determine if the district court abused its discretion in this class action when it entered a default judgment against Galaxiworld in the amount of $22,084,844. In their original complaint, appellees claimed that Jack Banks ("Banks"), Larry Weltman ("Weltman"), and Galaxiworld committed fraud by making a series of material misrepresentations about Galaxiworld's acquisition and operation of a gambling paper product business. On May 29, 1998, Galaxiworld's motion to dismiss the complaint in the class action was denied. On January 10, 2000, after merits discovery had been substantially completed in the class action, Galaxiworld's predecessor counsel, Proskauer Rose LLP, filed a motion requesting, *inter alia*, permission to withdraw as counsel to the defendants. On January 13, 2000, at a hearing regarding Proskauer's withdrawal, attorneys for the plaintiffs in the class action moved for a default to be entered against the appellants. By February 16, 2000, following a series of orders and amended orders published by the district court, Proskauer Rose had been permitted to withdraw, and default judgment had been entered against Galaxiworld in this class action in the amount of $22,084,844. On February 24, 2000, Sheldon Eisenberger filed a notice of appearance for the individual defendants. On March 23, 2000, Eisenberger filed a notice of appearance

for Galaxiworld, as its new counsel; he also filed a notice of appeal from the default judgment entered by Judge Patterson. For the reasons explained below, we hold that the district court abused its discretion when it entered a default judgment in the amount of $22,084,844 against Galaxiworld in this securities class action.

## II. BACKGROUND

In this class action, plaintiffs-appellees, who were investors in Galaxiworld stock, alleged that during the class period (February 1, 1995 through May 24, 1996), defendants Galaxiworld, Banks, and Weltman committed fraud by making a series of materially false and misleading public statements that misrepresented Galaxiworld's acquisition and lawful operation of the Specialty Manufacturing division of Ace Novelty, Inc., a gambling paper product business. In addition, plaintiffs claimed that defendants knew or recklessly disregarded that Galaxiworld's financial statements were false and misleading. Plaintiffs claimed that, as a result of these misrepresentations, defendants were able to inflate Galaxiworld's stock price by issuing a series of false and misleading public statements that described Galaxiworld's proposed acquisitions of other businesses and proposed contracts with state lottery commissions. According to plaintiffs, defendants benefitted from their fraud by selling Galaxiworld common stock to investors in private placements.

On May 29, 1998, Galaxiworld's motion to dismiss the complaint in the class action was denied because the plaintiffs' allegations gave rise to a strong inference of defendants' scienter under the Private Securities Litigation Reform Act of 1995. See In re Gaming Lottery Sec. Litig., No. 96 CIV. 5567, 96 CIV. 7527, 96 CIV. 7936, 1998 WL 276177 (S.D.N.Y. May 29, 1998). On February 23, 1999, a class consisting of all the persons who purchased Galaxiworld common stock in the American or Canadian securities markets between February 1, 1995 and May 24, 1996 was certified. See In re Gaming Lottery Sec. Litig., 58 F.Supp.2d 62 (S.D.N.Y.1999). By December 1999, plaintiffs had substantially completed merits discovery and had prepared the case for trial. On January 10, 2000, Galaxiworld's predecessor counsel, Proskauer Rose LLP, applied to the district court for an order (1) permitting Proskauer to withdraw as counsel to defendants and (2) directing payment of the outstanding fees and expenses. The district court set a hearing date of January 13, 2000.

Service of the order to show cause was directed to be made on Banks and Weltman. Banks claimed that he received the order to show cause on January 11, 2000 by fax. Neither Banks, nor Galaxiworld through any representative, appeared at the January 13, 2000 hearing. At the January 13, 2000 hearing, attorneys for the plaintiffs in the class action moved for a default to be entered against the appellants. On the same date, the district court entered an order which, inter alia, (1) granted Proskauer's motion to withdraw as counsel, (2) granted Proskauer's motion for payment of legal fees and expenses in the amount of $762,611.34, (3) directed Galaxiworld to pay Proskauer the said amount by January 18, 2000, (4) ordered Banks to cause Galaxiworld to pay the said amount by January 18, 2000, (5) restrained Galaxiworld from transferring any funds or assets until it satisfied the order and judgment, and (6) provided that if Galaxiworld failed to file a notice of appearance within five days, by January 18, 2000, a default judgment may be entered against Galaxiworld. On January 18, 2000, Banks wrote two letters to the district court explaining that he had not received the

court's January 13, 2000 order until January 17, 2000 and that he was attempting to find new counsel. In these letters, Banks requested thirty days to find new counsel. The district court denied this request. On January 19, 2000, Banks wrote another letter to Judge Patterson objecting to the January 13, 2000 order, which had been entered without Galaxiworld being heard on the issues decided. In response to Banks's letter of January 19, Judge Patterson vacated the judgment, set a new hearing date of January 25, 2000, and instructed Galaxiworld to appear by counsel on that date to show cause why judgment for Proskauer should not be entered. Judge Patterson also granted Proskauer's request that Banks and Weltman be ordered to appear at the January 25, 2000 hearing.[1]

On January 24, 2000, Banks, on behalf of Galaxiworld, advised the district court that it was unable to retain new counsel and requested thirty more days to do so. The district court denied this request at the January 25, 2000 hearing. On January 25, 2000, Banks and Galaxiworld failed to appear in court and Judge Patterson issued an order and judgment on January 26, 2000 modifying the previous judgment for Proskauer and awarding Proskauer a judgment in the amount of $569,536.48. Weltman, who had recently ceased to be Galaxiworld's CFO, did appear by telephone and gave testimony upon questioning by Proskauer. In addition, plaintiffs' counsel made comments and two Proskauer partners testified. At the close of the hearing, Judge Patterson addressed plaintiffs' January 13, 2000 motion and declared Galaxiworld in default and reserved decision on the amount. In the order and judgment of January 26, 2000, Judge Patterson ordered that a default judgment in the underlying securities fraud action be entered against Galaxiworld and that an inquest regarding the amount of damages be held on February 9, 2000.

At the inquest on February 9, 2000, neither Banks, nor Weltman, nor counsel for Galaxiworld appeared. On February 16, 2000 based on the testimony of plaintiffs' damages expert at the inquest, Judge Patterson signed an order and judgment against Galaxiworld in the amount of $22,084,844.

On February 24, Sheldon Eisenberger filed a notice of appearance on behalf of the individual defendants and appeared at a pre-trial conference on behalf of the individual defendants on February 25, 2000. At the February 25, 2000 hearing, Eisenberger made it clear that he did not represent the corporate defendant and was not then moving to vacate the default judgment. On March 23, 2000, twenty-nine days after he filed his notice of appearance for Banks and Weltman, Eisenberger filed a notice of appearance for Galaxiworld. He also filed a notice of appeal from the default judgment entered against Galaxiworld.

## III. DISCUSSION

At the outset, it is important to note the slightly unusual procedural history of this case. Typically, upon entry of a default judgment, defendants will move before the district court to vacate the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b). However, defendants do have the option of not moving to vacate the entry of default or the entry of the default judgment. Because a default judgment "is a final disposition of the case and an appealable order," it is possible, although unusual, for defendants to skip the motion to vacate the default judgment and instead directly appeal the entry

---

**1.** Banks was ordered to appear personally, Weltman by phone.

of a default judgment. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2692, at 84 (1998). This is what appellants chose to do in this case.

■ When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir.1994) (relying on Fed.R.Civ.P. 55(c)); *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983). In the case before the bar, the defendants' opposition to the class plaintiffs' motion for entry of a default judgment was non-existent because the defendants failed to appear. The district court entered a default judgment on behalf of the class plaintiffs because of the willfulness of the defendants' repeated unwillingness to show up and because of the prejudice that plaintiffs might have suffered should a default judgment not be entered. Although defendants did not argue in opposition to the entry of a default judgment against them before the district court, they do so now. "We review the district court's decision to grant the default judgment for abuse of discretion." *Commercial Bank of Kuwait*, 15 F.3d at 243. Even though Galaxiworld, through its representative, did not appear to contest the plaintiffs' motion for entry of default judgment, our review of the district court's decision to grant the default judgment will examine the willfulness of default, the existence of a meritorious defense, and the possibility of prejudice to the plaintiffs should the default judgment be vacated.

## A. *Willfulness of Galaxiworld's default*

After approximately four years of pretrial litigation, on January 10, 2000, defendants' attorneys at Proskauer Rose LLP made a motion to withdraw as counsel. The district court ordered the defendants to appear in court three days after the motion was filed to show cause why Proskauer should not be allowed to withdraw. As president of Galaxiworld, defendant Banks received the order to show cause on January 11, 2000 by fax.

On January 13, 2000, none of the defendants appeared in court to explain why Proskauer should not be allowed to withdraw. In response to the plaintiffs' motion for entry of default against the defendants, the district court entered an order, which, *inter alia*, indicated that the defendants "may" be held in default should they not file a notice of appearance within five days, by January 18, 2000.

Galaxiworld received the January 13 order on January 17, 2000 and, on January 18, advised the district court that it had been trying to find new legal counsel. Banks requested thirty days to find new counsel for Galaxiworld and even requested to act on behalf of Galaxiworld during that period. The district court denied Galaxiworld's request on January 18. *See Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir.1967) (per curiam) (holding that a corporation cannot appear other than by its attorney). On January 19, 2000, Banks sent another letter to the district court. In this letter, Banks reiterated his frustration with the short time frame that the court was operating under. In response, on January 19, 2000, the district court vacated its January 13 judgment and set a new hearing date of January 25, 2000. On January 24, 2000, Banks sent a letter to the district court, explaining his inability to retain new counsel in time for the January 25 hearing. In his letter, Banks explained that his attempts to retain new counsel were ongoing

and requested thirty days to complete this task.

On January 25, 2000 the district court denied Banks's application for a thirty day extension. After the January 25 hearing, a default judgment was entered with the amount of damages for the class plaintiffs to be set at a February 9, 2000 inquest. Defendants did not appear at any of these hearings. Therefore, on February 16, 2000, just over one month after plaintiffs' counsel had moved for a default judgment and just over one month after Galaxiworld's counsel in the class action had withdrawn, the district court entered a default judgment in favor of the plaintiffs and against Galaxiworld in the amount of $22,084,844.

■■■ This Court has held that "[s]trong public policy favors resolving disputes on the merits" and that, "[a]lthough courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir.1996). As a corporation, appellant, Galaxiworld, could only appear with counsel. Banks could not represent the corporation, pro se. In light of Galaxiworld's repeated contact with the district court and apparent efforts to retain new counsel, we cannot say that Galaxiworld deliberately chose not to appear.

Aside from not appearing in court, the record shows that appellants were in constant contact with the district court. Appellants were not ignoring the court's orders; instead, they made repeated efforts to inform the court of their difficulties in finding new counsel. Galaxiworld's inability to find new counsel and resultant inability to appear in court is understandable when the circumstances are considered. *Cf. Shapiro, Bernstein & Co.*, 386 F.2d at

427 (holding that a corporation cannot appear other than by its attorney).

Galaxiworld had been involved in the underlying securities litigation since 1996. Proskauer Rose, Galaxiworld's former attorneys, who had been allowed to withdraw, was holding Galaxiworld's files until Galaxiworld paid fees that were owed to Proskauer. Therefore, on less than one week's notice (January 19 to January 25), Galaxiworld was required to find new counsel in a complicated securities class action without the benefit of even being able to turn the files in the case over to the new counsel. Considering these circumstances, Galaxiworld's inability to find new counsel is not surprising, and its failure to appear cannot accurately be described as willful. Resolving all doubts in favor of the party seeking relief, we cannot say that Galaxiworld would not have appeared should it have been able to find new counsel. *See Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir.1980) (holding that all doubts are to be resolved in favor of the party seeking relief thus increasing the likelihood that disputes will be resolved on their merits).

In addition, consideration of other cases in which default judgments have been entered illustrates that the district court in this case ordered a default judgment more quickly than usual. *See SEC v. McNulty*, 137 F.3d 732, 735–36 (2d Cir.1998) (describing default entered almost one year after the action was commenced and after defendant failed to file an answer despite two extensions of time); *State Bank of India v. Chalasani (In re Chalasani )*, 92 F.3d 1300, 1305 (2d Cir.1996) (describing default judgment ordered three and one half months after court ordered defendant to produce requested discovery and pay withdrawing counsel's legal fees); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir.1991) (describing de-

fault judgment ordered when defendant admitted that he "deliberately chose not to appear [and] would not appear" for discovery or for trial); *Sieck v. Russo*, 869 F.2d 131, 133 (2d Cir.1989) (describing default judgment entered after defendant failed to appear for a deposition for at least three months and ignored two orders to appear).

In *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305 (2d Cir.1991), this Court affirmed the entry of a default judgment under facts that are similar to those in the case before the bar. However, in *Eagle Associates*, the corporate defendant had approximately three months to find new counsel after its predecessor counsel's application to withdraw was granted. *See id.* at 1306–07 (explaining that predecessor counsel's application to withdraw was granted on March 22, 1989 and corporate defendant was ordered to appear at a status conference with new counsel on June 19, 1989). In addition, a default judgment "for not appearing by counsel as ordered" was not entered until July 7, 1989, three and one half months after the corporate defendant's predecessor counsel withdrew. *Id.* at 1307. In affirming the district court's entry of default judgment, this Court explained that the "[corporate defendant] willfully disregarded the district court's order [and][t]he court was confronted by a recalcitrant party who failed to comply with its order to obtain counsel." *Id.* at 1310. Because Galaxiworld tried to obtain new counsel on an extremely tight schedule, without the benefit of having its files, and kept the district court aware of its efforts, we cannot compare the situation in *Eagle Associates* favorably to the situation in this case. *See also Flaks v. Koegel*, 504 F.2d 702, 709–11 (2d Cir.1974). As in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir.1993), Galaxiworld's conduct and Banks's "correspondence evidence[ ] [their] intent to fulfill [their] obligations as ... litigant[s]." *Enron Oil*, 10 F.3d at 97–

98; *see Allen Russell Publ'g, Inc. v. Levy*, 109 F.R.D. 315, 317–18 (N.D.Ill.1985) (holding that defendant's inability to retain counsel either due to lack of funds or conflicts of interest, despite reasonable attempts, should be considered in determining whether entry of default should be set aside).

### B. Existence of a Meritorious Defense

■ In connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense. *See Enron Oil*, 10 F.3d at 98. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

Because appellants did not move to vacate the default judgment before the district court and because the proceedings in this class action had not moved beyond discovery when Proskauer Rose withdrew, appellants' defense has only been subject to review in the context of their unsuccessful 12(b)(6) motion. *See In re Gaming Lottery Sec. Litig.*, No. 96 CIV. 5567, 96 CIV. 7527, 96 CIV. 7936, 1998 WL 276177 (S.D.N.Y. May 29, 1998). This class action was brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Rules of the Securities and Exchange Commission on behalf of purchasers of Gaming Lottery Corporation, which was the former name of Galaxiworld. The class action is based on the defendants' allegedly misleading public statements and financial reports issued during the class period that caused the stock of Gaming Lottery to be overvalued. In response to the plaintiffs' claim that defendants misrepresented the status of

Galaxiworld's acquisition of Specialty Manufacturing, defendants argue that two of the five allegedly misleading statements that plaintiffs suggest had a material effect on Gaming Lottery's stock price were true. As for the remaining allegedly misleading statements, defendants argue that all of those included a disclaimer pointing out that the acquisition of Specialty Manufacturing was subject to regulatory approval. With respect to appellees' claim that the appellants knew or recklessly disregarded the inaccuracy of Galaxiworld's financial statements, appellants justify their decision to consolidate the earnings from Specialty by pointing out their reliance on the advice of their accounting firm and auditors. Appellants argue that, because they relied on the oral and written advice of their chartered accountants, they cannot be found to have acted recklessly. Because these claims, if proven at trial, would constitute a complete defense, appellants have demonstrated a meritorious defense for purposes of vacating the default judgment entered against them.

### C. *Prejudice to Plaintiffs*

Plaintiffs indicate that they relied on the defendants' decision, at the district court level, not to challenge the validity of the default judgment entered against them. Plaintiffs argue that in reliance on the defendants' decision they incurred further court costs and counsel fees and that to vacate the default judgment would cause them prejudice. Specifically, plaintiffs point out that they proceeded to execute the default judgment, submitted an expert accountant's report, and moved to compel the individual defendants to produce documents.[2] We find the plaintiffs' argument unpersuasive. Attempting to execute the

default judgment and to proceed against the individual defendants was the sensible next step for the plaintiffs at the time that the default judgment was entered, but does not establish that they would be prejudiced now by our decision to vacate the default judgment entered by the district court.

### IV. CONCLUSION

Appellants argue that the district court abused its discretion because it entered a default judgment despite (1) Galaxiworld's active defense of this complex securities litigation since 1996, (2) Galaxiworld's payments to its former counsel, Proskauer, which were in excess of $3,000,000 (3) Galaxiworld's two requests that the district court grant it thirty days to secure new counsel once Proskauer withdrew, (4) a lack of objection or claim of prejudice by the plaintiffs with respect to Galaxiworld's request for thirty days to find new representation. Appellants also point out that the individual defendants in the case (Banks and Weltman) did secure new counsel less than thirty days after Galaxiworld's request for the thirty day grace period. Appellants assert that the new counsel would have represented Galaxiworld as well, but for the entry of default judgment against it.

 It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits. *See Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995); *Enron Oil,* 10 F.3d at 92, 95 (holding that refusal to grant relief from default was an abuse of discretion "because [default] should be reserved by a trial court as a final, not a first, sanction imposed on a litigant"); *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 814 (2d

---

**2.** To support their reliance argument, plaintiffs cite an inapposite Fourth Circuit case that deals with reopening a bankruptcy case

and does not involve a default judgment. *See Hawkins v. Landmark Fin. Co.,* 727 F.2d 324, 326–27 (4th Cir.1984).

Cir.1975). Focusing on the complexity of this securities litigation, the short time in which Galaxiworld was expected to find new counsel, and the inability of Galaxiworld to present its prospective new counsel in the case with the case files due to Proskauer's retaining lien, we hold that Galaxiworld's default lacked the requisite willfulness necessary to justify upholding a default judgment. Therefore, the default judgment entered by the district court is VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.